We'll begin the second case now. 419-0467-WC Flex-N-Gate Logistics Appellant v. The Workers' Compensation Commission, James Fry Appellee. Okay, counsel. Thank you. Ready to proceed? I am. Okay, Mr. Stramanis, you may proceed. Thank you. Thank you. May it please the court, counsel, my name is John Stramanis. I represent the Flex-N-Gate Logistics. The standard of a review is de novo. The facts are straightforward, and I'll briefly go through them, but it will be brief. Petitioner in this case works for Flex-N-Gate primarily as a short-haul truck driver. He was injured as he went up the stairs to turn paperwork, and for his original, for the first run of the day, he was going to travel from Danville to Champaign-Urbana. Mr. Stramanis, are you sure about your standard of review? I thought about this, and I think that the designation, as to how far the traveling employee doctrine extends, and the legal designation of a traveling employee seems to be one of law. The underlying facts of the case are not in dispute, and for that reason, I suggested it was de novo. My opponent also agreed that it was a de novo review. Well, we'll deal with that later. Okay. Mr. Stramanis, if I could cut to the chase. I think we're pretty much familiar with the background facts here. You are essentially contesting that the injured worker was a traveling employee. Is that correct? That's correct. Okay. Can we agree that under the Illinois Supreme Court decisions, a traveling employee is any employee for whom travel is an of the employment, correct? That's also correct. Okay. So, in this case, the claimant, it's undisputed, has to drive from Indiana into Illinois, go to a number of different facilities, and was injured while he was at, albeit one of the employer's facilities, but obviously, he's traveling interstate. He's traveling around making a number of stops. Can you tell us, please, why he does not qualify as a traveling employee? Certainly. And I think it's the same reason the arbitrator didn't address this issue in the decision, nor did either party address this at trial, at arbitration. It's because the petitioner was injured at the central hub of his employer. The basis of the traveling employee doctrine is to compensate for a petitioner or a worker who, because of the travel requirements associated with his job and the frequency in which he was exposed to street hazards that we are all otherwise subject to on a daily basis. Can I ask you this? Do you have any cases that stand for that proposition? I don't, but I also don't have any cases where the traveling employee doctrine was applied at the central hub, the central workplace. I think because it's obvious. So, are you saying that somebody is a regional supervisor for, let's say, Walgreens or CVS, who has to travel between states all over the place, who's obviously going to be going to his employer's quote-unquote premises, cannot qualify as a traveling employee if he gets injured? Not, I think that's true if that particular regional employee was injured at the local place of business. What do you mean? So, if he's injured at a Walgreens, he doesn't qualify for as a traveling employee, is that as long as he works for Walgreens? If he's injured at his local office, yeah, then he's not a traveling employee. Excuse me. What local office are you talking about? I'm making an analogy to this case. Presumably, a regional Walgreens person would have a desk, or let's say he's working for a mall. Mr. Schumach, excuse me, do you want us to write an opinion that says an individual loses his status as a traveling employee if his injury occurs on his employer's premises? Is that what you're asking us to do? I am. When that premise is the central hub or the central location to where he works, this it's either he was injured on his employer's premises or he wasn't. Correct. Well, you want us to write an opinion that says he loses status as a traveling employee if the injury occurs on his employer's premises. On the local premises, that's correct. Because the reason for the traveling employee doctrine, and this court-generated doctrine, is to compensate for the street hazards. There's nothing about this case that creates an additional hazard to the employee. Mr. Sturmanis, it's reasonable foreseeability. It's not street hazard. The street doctrine is a creation that addresses street hazards. They may be foreseeable by a traveling employee, but there's cases out there where the traveling employee tripped walking out of the bar. That has nothing whatsoever to do with this. It was foreseeable that a traveling employee might have a libation in the evening. So if I may interject and ask a question, counsel, you seem to be drawing a distinction. I'm not indicating I agree with it, but you seem to be doing so in that you're saying local, the local establishment, the hub of the business. What do you mean by that? Because I asked the question because Justice Hudson asked you a scenario where the employee had traveled somewhere to a different location. You seem to be saying there's some distinction because it's the local hub. I believe that's true. There's nothing about the injury or the, there's nothing about the, that his, there's nothing about the location of the injury that increased his risk because he was at his employer when the accident happened. It's not making any, I don't understand where you're going with this. You've engrafted your theory that it's the local hub. Who says it's a local hub? He started out in Indiana. All of these facilities are arguably local hubs under the scenario you've created. So basically you're asking us to write the traveling employee document out of existence unless the person's at somebody else's business facility. Well, this was his, this was his primary, this was the hub. This was the place he went to and then made his daily trips back and forth. Right, so we don't tie you up completely on this. As I understand it, you've conceded for the record, you have no case law to support your argument that a person's excluded when they arrive, end up arriving at a local facility, as you call it, correct? I think the basis for the traveling employee doctrine is, is because of the additional risk of an, of traveling employees. We understand your argument. He hasn't left his employer. We understand your argument. Do you have any cases to support that? He starts out in one state, I couldn't find, I couldn't find a case in which the traveling employee, employee, e-doctrine was applied to this scenario, a local employer. Now, I have a question, Mr. Hermanis. The facts, if I understand them, he left his home and reported to work at Covington, Indiana, correct? Correct. And that's not the hub or the business center. That's correct. Correct. What if he fell upstairs at the Covington, Indiana facility? I think there should be one primary workplace, and in this case, it would be the Danville facility. So, so would you call him a traveling employee? Let me see. He left Covington, um, picked up his tractor trailer and then, then took the trailer to Danville, and that's where, right? Right. Okay. Now, um, he didn't fall down then, did he? He fell down after he went into the plant in Danville. Uh, well, didn't he go to Urbana from Danville? I think that's where he was heading. I believe this was his first, I thought this was the first stop. I like, he was going to go from Danville to, to Urbana, but after every trip, he goes back. I have, I have a different fact pattern, perhaps maybe, uh, respondents or not respond to your response, but the petitioner's counsel can help straighten out this route that the petitioner was on and, you know, which base, so to speak, he was at. Okay. I think he was at the home base. When he fell, he was at his home base. Yeah. That's where he, that's where all his trips started and ended other than the first one in Indiana, but he, that was the central hub. He was not injured reporting to his home base, driving in his commute to the home base, was he? He, he was, he was injured when he was, uh, taking paperwork to... From another state, correct? Right. He wasn't traveling, commuting to his first place of business. No, no, it's not, it's not really a coming to or going to from, but it is where he was injured at his employer's location. And I, I couldn't find any case law anywhere. I'll reserve, let's see, is that the, oh, I'm sorry. Um, it's always all the case law, all the traveling employee case law is when somebody is injured away from their employee. There's nothing, there's nothing particular about this, uh, employer's location that increased his risk. He fell in Covington, he fell in Urbana, Champaign, and then there was another site in Indiana because he's just, he's basically jockeying trailers as I am. That's right. For your, for the employer. So any of those other places, you don't have a problem with? He, he, he's jockeying trailers to the central location and that's, that's what I have a problem with because he was injured at that location. I, I, I don't have a, a argument for if this happened in Urbana. Okay. Okay. I wanted to be clear. Can I ask a couple of stylistic questions? Sure. Why did you cite a commission decisions to us in your brief number one and number two, why do you refer to Northeast sites and not official sites if you're required to do? Well, that was, that was, uh, in error. I believe the commission decisions that I cited were from the, were pulled out of the arbitrators decision, but I understand it's, it's not, uh, authoritative and, um, I, I should have cited the official site, not the Northeast site. Well, you cite the official site the first time you cite the case. And then the second time you cite the case, you give us Northeast sites as opposed to giving us pin sites, the paragraphs in the initial decision. That was an error. I, I will, uh, I'll wait to reserve the rest of my time until after, uh, council presence has argued. You'll have time and reply. Okay. Thank you, Mr. Mr. Lichtenberger, your response. Good morning, please. The justices and council. Um, I think that, uh, flexing gate has conceded that, that this was a job that required, try to travel away from his employer's premises. And so I don't think that's even an issue for discussion. Um, the, the rule is simple, that, that if a traveling employee or employee is injured, uh, it is considered to be a rising out of them in the course of his employment, as long as he was engaged in rule has been discussed in numerous cases. I think that there have been cases where, where council has tried to bring in the issue of increased risk, and the court has said that's, that's not part of the analysis. Um, Mr. Council has, has repeatedly referred to this as being injured of the central hub. I was back pattern here is not indicate there's any such thing as a central hub in this case. The testimony was that he arrived in Covington, Indiana, picked up a truck, went to the plant in Danville. From there, he continued on and went to Urbana. From Urbana, he came back to Danville plant. That's where the injury occurred. He testified that he had not been injured. He would have then gone back to Covington, Indiana, continued to Petersburg, Indiana, um, and then ended his ship back at the Covington, Indiana plant. And there's no suggestion that any one of these plants is a hub. He just goes back and forth variously as directed by his employer and then parks his truck back in Covington at the end of the day and starts over. Um, again, Mr. Lichtenberger is Danville the legal location for Flexingate? I don't believe so. I believe that the Urbana plant is the home site or the the main plant, if you will, for this company. I could be wrong about that, but I'm pretty sure it's the Urbana plant. Oh, okay. Can I ask you a question, sir? Sure. Your opponent would have us write an opinion that says that a traveling employee loses his status as such if his injury occurs on his employer's side. I can cite us no cases. Can you cite us any cases that suggest he doesn't lose that status? The case that you cite, uh, in your brief, I think is, uh, really, really not applicable. It was the gentleman that was traveling between two branches and he tripped in a parking lot that belonged to his employer on his way to the second branch. But I can find no cases that suggest that a traveling employee retains his status if his injury occurs on his employer's premises. Traveling employees to protect him because he's moving from place to place. But in this particular case, he is on his employer's premise. You got a case? I could not find a case that involved an injury on the premises. When I cited the Curtis case, I believe my language was that was the closest case that I could find. And you're right. That's exactly what you did say. Yeah. I mean, at least it involved a person who was traveling between locations owned by the same employer. And as he was, I think, leaving the parking lot, stepped in a pothole and hurt his back. And I guess a couple of things. I think if there was some reason to think that had he been in the building or on the premises at the time that the traveling employee doctrine wouldn't have applied, certainly there may have been. This would have been a great time for some discussion by the court or at any other time in any other cases. What I do see when I read case law about the traveling employee doctrine is that there have been numerous attempts by employers to try to carve out exceptions or add analysis of increased risk. And the court has been inconsistent in one thing. They have kept this a simple rule. If you ever travel away from your employer's business, you are a traveling employee. And the only issue that needs to be resolved after that is whether your conduct was anticipated or foreseen by the employer. Nowhere in any case that I ever read that the court even entertain some other deviation of this rule or some other application. And I would suggest that the court should maintain the simplicity of this rule and not complicate it as the employer would want by starting to carve out exceptions with no real argument as to why or basis for why. There's just no compelling reason here to change that rule. Well, we do have a series of cases that would suggest that because a person was a traveling employee at the time of the accident doesn't make them a traveling employee at all times. We've got cases where people work in restaurants. They work in a restaurant, that's their job, but they're sent to the bank to make a deposit and they trip and fall on the street when they're going to the bank. We say they're a traveling employee at that point in time, but were they a traveling employee where they were waiting on tables in the restaurant? In that scenario, I would say no, because I would say that traveling to a bank to make a deposit and coming back to the restaurant, it would not be considered an essential part of that employee's duties. In my client's case in Pride, traveling was an essential duty. That's all he did was travel from location to location to location all day long. I would just say at this point, I really don't have anything further to add. If somebody has a question for me, I don't think I could do anything but just repeat what I've already said. Well, there's no dispute that he was in the course of, correct? Correct. That's correct. And so we're finding a rising out of under a doctrine of traveling employee, is that right? That is our argument. Yes. Who came up with that argument? That argument was developed by the commission in the workers' compensation phase. What's your perspective if they have the wrong theory under compensability of rising out of? My perspective is that this still was a rising out of because there was a quantitative and a qualitative increase in risk. Mr. Pride testified that he was going up and down steps at almost every location at least 8 to 10 times per day. He also testified that just prior to his injury at the Danville plant, that the employer had requested him to move or jockey some trailers on the lot and that he felt rushed because that was putting him behind in his daily delivery routine, which I believe that would be a qualitative increase in risk. Council argues that there were facts to say otherwise. I would argue there are no other facts in this case. The only facts that would pertain to his being hurried or rushing at the time was his own testimony, which was not rebutted. Are you familiar with the latest iteration of the Illinois Supreme Court? I am not. Well, we're all looking forward to it. Mr. Lichtenberger, you preceded on the arbitrator found compensability on the neutral risk theory, correct? The commission then modified that and went with the traveling employee doctrine on appeal to the commission, correct? Right. Okay. Well, there's a third theory, both counsel that might be investigated. You might look at that. Are you? Are you done? Mr. Lichtenberger? Yes, Your Honor. Okay, well, thank you, Mr. Stamatos. You may reply just briefly. I think this extends positional risk, and the Supreme Court has said positional risk does not apply in Illinois. I would also say that the facts of the case point to this being the central hub. And with regards to the qualitative and quantitative, I don't think that's been established. I don't know that somebody can say that the risk has been evaluated in that day. There's no defective in steps. Of course, that's not disputed, but the case law seems to hold that it's got to be qualitative and quantitative. And I don't believe that's been established in the event that this is not a traveling employee case, which I don't think it is. Mr. Stamatos, are you familiar with the McAllister case? I'm not. Well, is this an integral part of his job duties to go up and down these stairs? It is. It is. It's something that he does. I think six or seven. I think the testimony was he would have done it six or seven times that particular day at the Danville plant. But again... Well, at every plant, he has to go up, apparently, stairs. There are different plants and different steps. I don't know that steps add up over the course of a day to make an increased risk, especially when there's no defect. Well, I suggest both counsel look at McAllister. It is out there as law presently. It's under review by the Illinois Supreme Court. So we don't know in the future whether it is, but that's... And I would just suggest that there's no case law indicating somebody's a traveling employee at the primary place of their employment. The facts in this case establish, or at least he testified, that at the time he fell on those stairs, he was in a hurry because he had to do I think that the facts don't support that he was in a hurry, was not in a signed accident report, was not in his medical history. There was no testimony that he had difficulty using the steps. There's no reason given for him being in a... There's no... Other than that self-serving statement, there's nothing about him being in a hurry or why being in a hurry caused this accident. In fact, I think the arbitrator's decision just says that he testified to that. It wasn't a fact that that was established. So I... Why can't his testimony establish that he was in a hurry? I felt like I was in a hurry when nothing else supports that whatsoever. There's no corroboration. Does it have to be corroborated to be a fact? Well, I think the arbitrator's decision just said that's what he testified to, and there's no indication of how that contributed to his fall. In fact, there's no evidence whatsoever that... Well, he's... According to the facts I read, he not only testified he was in a hurry, he testified why he was in a hurry. He was going to move... He had to move trailers in the parking lot. Right. And that was offered for the first time at trial, but it's not that... He even testified he did not know why he fell, so that certainly takes out the hurry aspect. I suppose... He didn't say, I fell because I was in a hurry. I suppose it begs the question, if I'm hurt falling down the stairs and I go in and tell the doctor I fell down the stairs, do I have to tell the doctor why I fell down the stairs? Well, you think you put it in your accident report, you think there'd be some evidence somewhere about it being in a hurry because that... Clearly, his testimony he was in a hurry is evidence. It's evidence, but it wasn't finding fact, and it did not... And there was no indication that that contributed to his fall whatsoever. In fact, he said he did not know why he fell. Anyway, I think that extending... Calling someone a traveling employee at their workplace is outside the rationale why the traveling employee doctor established in the first place. And I would ask that you reverse the decision of the circuit court. Thank you. Okay. Well, thank you, Mr. Stravanos, Mr. Lichtenberger, both for your arguments in this matter. Thank you.